## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | |
|---|---|
| BENJAMIN MURPHY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR NORTH AMERICA, INC.,<br><br>Defendant. | **Civil Action No.**<br>**JURY**<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Benjamin Murphy, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Toyota Motor North America, Inc. ("Toyota" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1.      Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendant's breach of its duties and rules.

2.      Plaintiff brings this action on behalf of himself, and all similarly situated persons who purchased or leased any 2022 or 2023 Toyota Tundra Trucks ("Class Vehicles").

3.      This action is brought to remedy various violations of law in connection with Defendant's manufacturing, marketing, advertising, selling, warranting, and servicing of the Class Vehicles.

4.      Specifically, these Class Vehicles have malfunctions in regard to their fuel lines. Specifically, the fuel lines rub against brake lines, which then causes fuel line leakage and the release of gasoline ("Fuel Line Defect").[1] The result of this defect is a massive fire risk in which gasoline, the Class Vehicles' fuel, leaks everywhere, along with gasoline vapor. Both vapor and liquid gasoline are highly flammable and present a ready danger when exposed to any sort of ignition source.[2]

5.      Further, Defendant's actions are reprehensible in an environmental sense, given that such a fuel leak wastes fuel which lessens consumer's miles per tank. This use of more gasoline, spread over 170,000 vehicles, has the potential to waste millions of gallons of gas that would not otherwise be used. This is a harm to the public good both economically and environmentally given the volatile nature of the earth's climate and domestic gas prices.

6.      In early August of 2023, Toyota recalled nearly 170,000 of the above referenced Class Vehicles ("Recall").[3]

---

[1] https://www.wistv.com/2023/08/14/toyota-recalls-Tundra-truck-models-potential-fire-hazard/
[2] https://www.knoxvilletn.gov/government/city_departments_offices/fire_department/fire_educati on/safety_tips/flammable_substances#:~:text=Gasoline%20has%20a%20flash%20point,cause% 20an%20explosion%20or%20fire.
[3] *Id*.

7.     The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

9.     This Court has personal jurisdiction over Defendant because Defendant is a resident of this District with it's headquarters and principal place of business are located within this District.

10.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. The Defendants sell and distribute their vehicles throughout the United States and have their principal place of business and headquarters within this District.

## PARTIES

11.     Benjamin Murphy is a citizen of the State of Mississippi and resides in Magee, Mississippi. Magee is located within Simpson County, Mississippi.

12.     Defendant is a corporation organized and in existence under the laws of the State of Texas with its principal place of business in Texas. Defendant's corporate headquarters are located at 6565 Headquarters Drive, Plano, Texas, 75024. Defendant's corporate headquarters are located within Collin County which falls under this District's jurisdiction.

13.     Defendant designs, manufactures, markets, distributes, services, repairs, sells, and leases vehicles, including the Class Vehicles, nationwide. Defendant is the warrantor and distributor of the Class Vehicles in the United States.

14.     Defendant, through various entities, markets, distributes, warrants, and sells Toyota automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States.

## FACTUAL ALLEGATIONS

15.     In late September of 2022, Plaintiff purchased his 2022 Toyota Tundra from Toyota of Brookhaven in Brookhaven, Mississippi.

16.     Plaintiff's Tundra has a vin number that is included within Defendant's Recall.[4]

17.     Based on Toyota's active and persistent promotions touting the quality of its vehicles and his admiration of Toyota vehicles, Plaintiff considered Toyota a quality company with a strong reputation for producing reliable vehicles.

18.     In addition to Toyota's reputation through its marketing and promotion, Plaintiff decided on the 2022 Toyota Tundra because he believed it was a high-quality vehicle after a salesman convinced him that the vehicle was highly reliable and came with great technological features and was more capable than the Toyota Tacoma.

19.     Plaintiff has never been informed of any recalls or defects related to his vehicle's fuel delivery system by anyone affiliated with Toyota and has heard of the fuel line defects on social media.

---

[4] https://www.toyota.com/recall

20.    Since 2022, Defendant has designed, manufactured, distributed, sold, and leased the Class Vehicles. Defendant has sold, directly or indirectly, through dealers and other retail outlets, over 160,000 Class Vehicles in Mississippi and nationwide.[5]

21.    Mentioned earlier and discussed in more detail below, the Class Vehicles contain a design defect that causes a serious safety concern. The design defect with the Class Vehicles is contained in the fuel delivery system, specifically in the fuel lines.

22.    In more detail, the Class Vehicles' problem stems from the improper internal routing, or improper fastening, or improper design or production of the vehicle's fuel lines. As a result, fuel lines rub against brake lines causing wear, and the fuel lines become compromised, leaking gasoline.[6] This is a massive fire risk.[7]

23.    To be clear, the Class Vehicles use fuel that is highly flammable as a liquid or a vapor.[8]

24.    Further: "Gasoline is readily available and routinely used in most households. In spite of the routine use of gasoline, many people are unaware of or unappreciative of the dangers of gasoline.  Gasoline is dangerous because it is highly volatile. The fumes are capable of ignition up to 12 feet away from a pooled source. It can float on water and may spread long distances, making ignition and flashback possible. Gasoline may ignite from a nearby spark, flame, or even static electricity and become a "fireball" with a temperature of 15,000 degrees F."[9]

---

[5] https://www.wistv.com/2023/08/14/toyota-recalls-Tundra-truck-models-potential-fire-hazard/
[6] *Id*.
[7] https://cob.org/services/safety/education-safety/gasoline#:~:text=The%20fumes%20are%20capable%20of,temperature%20of%2015%2C000%20degrees%20F.
[8] *Id*.
[9] *Id*.

25.    This fire risk is inherently and particularly dangerous to Class Members because the Class Vehicles are often work trucks and personal trucks used for outside activities such as tailgating, grilling, camping, or other recreational activities. Each of the aforementioned activities likely involve flames or ignition sources given the probability of fires used in such activities.[10]

26.    The defective fuel line system inside the Class Vehicles malfunctions within the first two years of its lifespan, whereas the expected life span of the fuel lines is often as long as the lifespan of the car itself.[11]

27.    Nearly 170,000 of the Class Vehicles with defective fuel delivery systems have been sold in America.[12]

28.    The result of Defendant's recall, which includes a free fix and repair clause in which Defendant will repair and replace the faulty parts, will cost Plaintiff hours of his time. This is due to the time spent on repairing fuel lines, which can take up to six hours but no less than two hours.[13]

29.    Defendant's Recall is concerning because it does not offer any reasonably foreseeable guarantee that the Fuel Line Defect will go away permanently. Rather, the Recall mentions installing a fastener to keep the fuel line from rubbing against the brake line.[14] However, it does not detail any other fixes to prevent other possibly faulty fuel lines, or rearranging fuel lines elsewhere as to prevent a similar rubbing situation. One is left to presume that their car might have other faulty fuel lines or lines that are improperly spaced / packed too tight relative to additional

---

[10] https://studentlesson.com/types-of-gas-welding-flames/; https://fox59.com/news/dumped-hot-coals-from-tailgating-grills-blamed-for-car-fires-at-football-game/; https://www.nps.gov/articles/campfires.htm

[11] https://www.autoguru.com.au/repairs/fuel-hose-replacement-cost

[12] https://www.wistv.com/2023/08/14/toyota-recalls-Tundra-truck-models-potential-fire-hazard/

[13] https://www.fixdapp.com/service/fuel-line/fuel-line-replacement-cost/#:~:text=Replacing%20the%20fuel%20line%20on,that%20involves%20removing%20many%20components.

[14] https://www.cnn.com/2023/08/12/business/toyota-recalls-models-over-fire/index.html

sorts of lines. Further, if one is to apply pressure onto one part of a rigid line, essentially a basic lever, it is presumable that other portions of this rigid line will be moved by the alteration.[15][16] Given Defendant's fastener-less, tight packing, and spatially small nature related to its installation of fuel and brake lines in Class Vehicles, Defendant's proposed fastening will foreseeably cause similar rubbing and part failure in other areas of the vehicle. Defendant has created a vehicle with small pathways for fuel and brake lines, has improperly fastened these lines throughout the vehicle, and now has a leaking fuel line because of such misfeasance. Now, Defendant's solution to this Fuel Line Defect is to fasten the fuel line at its point of contact with the brake line which will cause the fuel line to move and rub against other parts of the various lines throughout the vehicle. And, given the lack of proper fastening which caused the original Defect, it is logical to conclude that the proposed repairs to the Class Vehicles will be no more than a constant game of cat and mouse, in which Plaintiff is left to fasten and refasten the fuel line, and maybe other lines, in perpetuity.

30.    Further, Defendant has already issued seven recalls on this specific Class Vehicle, and any fixes to this vehicle are no more than temporary solutions to a faulty vehicle.[17]

31.    Assuming that the Recall was effective and offered a true fix, Plaintiff is still burdened with a vehicle that has been devalued by Defendant's actions because the value of a car with a known history of faulty fuel lines is worth much less than a car with properly working fuel lines, or at least a history of working fuel lines with no critical issues.

32.    Given the above, there is a cognizable risk inherent within this Recall. Unless Defendant is to issue a more comprehensive recall to truly fix the root cause of the Fuel Line Defect, it is foreseeable, and should be expected, that the Class Vehicles' fueling systems will fail

---

[15] https://openstax.org/books/physics/pages/4-4-newtons-third-law-of-motion
[16] https://owlcation.com/stem/Simple-Machines-How-Does-a-Lever-Work
[17] *Id*.

once again, leaking valuable and combustible gasoline everywhere. Defendant's Recall is no more than a repeatedly ineffective waste of time as there is no true fix for the Fuel Line Defect.

33.    Further, if one portion of the fuel line is rubbing against another part of the vehicle so much so as to cause a leak, as mentioned above, there is no proposed solution related to all of the other portions of the fuel line becoming worn or rubbing against other vehicle parts as well. In simple terms, Defendant does not appear to truly know what is wrong with its vehicles.

34.    In all, Defendant's Recall leaves more questions than answers regarding the Class Vehicles' safety and fueling system and as such results in a diminution in value for the vehicles in question.

35.    Transitioning back to the repair itself, at a bare minimum, this two-hour repair time means that it will take Defendant roughly 340,000 hours to repair the Class Vehicles. In a more comprehensible term, 340,000 hours amounts to 38.8 years.

36.    In addition to the sheer amount of time spent in repair, Plaintiff, like every other Class Member, must spend time and money to transport himself and his defective Class Vehicle to a Toyota certified mechanic. For Plaintiff, this service center is Toyota of Hattiesburg in Hattiesburg, MS. His commute begins at his home in Magee. Or, Plaintiff can return to Toyota of Brookhaven.

37.    Plaintiff's repair-related commute is roughly a 50-mile, one hour per way, trip via U.S. Highway 49 for Hattiesburg.[18] Or, Plaintiff can drive even further and go back to Brookhaven, MS, which is nearly an hour as well.[19]

---

[18]https://www.google.com/maps
[19]https://www.google.com/maps

38.     Given the math above, Plaintiff may spend up to eight hours, but no less than four hours, in repairing his Class Vehicle.

39.     In addition to the sheer amount of time spent in repairing his vehicle, Plaintiff is faced with another difficult expense, the price of towing  his vehicle. The average cost of towing, per mile, is $4.75 per mile.[20] Given Plaintiff's roughly 50-mile commute, this cost amounts to $237.50 taken from Plaintiff for his own Class Vehicle to be safely transported from his home in Magee to Hattiesburg to be repaired.

40.     Given the additional time it takes for a tow truck to arrive, roughly thirty minutes, Plaintiff's total time spent solely on transporting his vehicle amounts to three hours, unless of course one is to assume that Plaintiff drives his potentially explosive Class Vehicle to the dealership.[21]

41.     In all, Defendant's Recall amounts to tens of thousands of hours and dollars needlessly taken from Plaintiff and other Class Vehicle owners.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **Nationwide Class:** All persons in the United States who purchased or leased any 2022-2023 Toyota Tundra Vehicles.

> **Mississippi Subclass:** All persons from Mississippi who purchased or leased any 2022-2023 Toyota Tundra Vehicles.

---

[20] https://www.thezebra.com/resources/driving/how-much-does-towing-a-car-cost/#:~:text=The%20average%20cost%20per%20mile,mile%20on%20the%20high%20end.&text=Many%20towing%20companies%20may%20also,miles%20you%20need%20to%20go.
[21] https://myautomachine.com/how-long-do-tow-trucks-take/

43.     Together, the Nationwide Class and Mississippi Subclass will be collectively referred to as the "Class" or "Classes." Members of these Classes will be referred to as "Class Members".

44.     Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

45.     Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

46.     The proposed class definitions in ¶ 42 as limited by ¶ 45 may be amended or modified from time to time.

47.     The particular members of the (i) Nationwide Class, and (ii) Mississippi Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

48.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49.     The Proposed Classes are so numerous that the joinder of all members is impracticable.

50.     This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

51.     **Numerosity: Fed. R. Civ. P. 23(a)(1)** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

52.     **Typicality: Fed. R. Civ. P. 23(a)(3)** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Vehicle that contained the same Fuel Line Defect found in all other Class Vehicles.

53.     **Adequacy: Fed. R. Civ. P. 23(a)(4)** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

54.     **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual class members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

55.     **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** Common Questions of law and fact exist as to all members of the Class. These questions predominate over

the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

    a.  Whether Class Vehicles contain the alleged Fuel Line Defect;

    b.  Whether the Fuel Line Defect would be considered material by a reasonable consumer;

    c.  Whether the Fuel Line Defect would constitute an unreasonable safety risk;

    d.  Whether Defendant had a duty to disclose the Fuel Line Defect to Plaintiff and other Class Members;

    e.  Whether Defendant knew or reasonably should have known of the Fuel Line Defect before it sold and leased Class Vehicles to Plaintiff and Class Members;

    f.  Whether the Fuel Line Defect has diminished the value of the Class Vehicles;

    g.  Whether the Fuel Line Defect is capable of being repaired;

    h.  Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the Fuel Line Defect;

    i.  Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective engine parts;

    j.  Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the UCC;

    k.  Whether Defendant breached its express warranties under state law and/or the UCC

    l.  Whether Defendant is liable for fraudulent omission;

    m.  Whether Defendant was unjustly enriched;

n.  Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY

56.    Plaintiff incorporates paragraphs 1-55 as if fully set forth herein.

57.    Plaintiff brings this count on behalf of himself and the Class.

58.    Plaintiff and other Class Members formed a contract with Defendant at the time they purchased their Class Vehicles. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

59.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Class Vehicles' packaging and through marketing and advertising, as described above.

60.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

61.    As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Class Vehicles are safe for their intended use.

62.    Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Class Vehicles.

63.    Defendant breached express warranties about the Class Vehicles and their qualities because Defendant's Class Vehicles contained defects and the Class Vehicles do not conform to Defendant's affirmations and promises described above.

64.     Plaintiff and each of the members of the Class would not have purchased or leased the Class Vehicles had they known the true nature of the Fuel Line Defect.

65.     As a result of Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

66.     Plaintiff suffered injury through Defendants conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

67.     Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell or trade-in his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

68.     Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, as well as money, in tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

## <u>COUNT II</u>
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

69.     Plaintiff incorporates Paragraphs 1-55 as if fully set forth herein.

70.     Plaintiff brings this count on behalf of himself and the Class.

71.     Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

72.     The Class Vehicles are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

73.     Defendant entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and Class Members for personal use.

74.     The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendant guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

75.     Defendant breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendant did not indicate that the Class Vehicles would contain the Fuel Line Defect.

76.     Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of the fuel leakage - the Class Vehicles are not fit for their particular purpose of legal and safe transportation and usage. Defendant's Recall does nothing to truly address this risk, given that there is no explanation on the cause of the Defect. Rather, the Recall continues to replace parts within a defective system with no true bona fide fix to the system that causes the parts to fail.

77.     Defendant's warranty expressly applies to the purchaser of the Class Vehicles, creating privity between Defendant and Plaintiff and Class Members.

78.     Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

79.     Defendant had been provided sufficient notice of its breaches of implied warranties associated with the Class Vehicles. Defendant was put on actual notice of its breach through the contract between Plaintiff and Class Members and Defendant, and its review of consumer complaints as well as Defendant's own recall.

80.     Had Plaintiff, Class Members, and the consuming public known that the Class Vehicles would not be provided with proper fueling systems, they would not have purchased the Class Vehicles or would have paid less for them. To reiterate, had Plaintiff and Class Members known of the Fuel Line Defect, they would not have purchased Class Vehicles.

81.     As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

82.     Plaintiff suffered injury in that he purchased a Vehicle that is worthless. For all intents and purposes, Plaintiff's vehicle is now a notoriously unsafe vehicle that has trouble with leaking valuable and combustible fuel.

83.     Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

84.     Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to Defendant's recall. Had Defendant produced a vehicle that was roadworthy and reliable, Plaintiff would not have had to spend hours upon hours of his life tending

to this Recall. Plaintiff did not bargain for, or pay for, a vehicle that has horrendous trouble with leaking gasoline and requires hours upon hours of work to not leak dangerous combustible fuel.

## COUNT III
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## (15 U.S.C. § 2301 *ET SEQ.*)

85.    Plaintiff incorporates paragraphs 1-55 as if fully set forth herein.

86.    Plaintiff brings this Count individually and on behalf of the Class.

87.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

88.    Defendant is a "supplier" and "warrantor" with the meaning of the MMWA.

89.    The Class Vehicles are "consumer products" within the meaning of the MMWA.

90.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

91.    Defendant's express warranties are written warranties within the meaning of the MMWA.

92.    Defendant breached its warranties by offering for sale and selling the Class Vehicles, which were by design and construction defective and unsafe due to the Fuel Line Recall.

93.    Defendant's actions subjected Plaintiff and the Class to danger as well as monetary damages in that the Class Vehicles are inherently worth less compared to their value had the Class Vehicles been free of the Fuel Line Defect.

94.    Additionally, Plaintiff and the Class Members suffered damages in that they have been greatly inconvenienced by this Recall and Defect as Plaintiff and the Class Members have had to collectively spend thousands of hours and thousands of dollars in costs related to repairing the Fuel Line Defect.

95.     Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Class, when the Vehicles fail to perform due to the Defect.

96.     As a result of these breaches, Plaintiff and the Class have suffered damages.

97.     Plaintiff and the Class seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Class may be entitled.

98.     Plaintiff and the Class suffered injury through Defendant's conduct in that Plaintiff and the Class are now owners of vehicles that are worth significantly less, given the Defect and the notoriety therein.

99.     Plaintiff and the Class suffered injury through Defendant's conduct in that Plaintiff and the Class have, or will have to, spend hours upon hours of their own time, and thousands of dollars in towing fees, in seeking repair for these Class Vehicles. Regardless of Defendant's free repair, Plaintiff and the Class are still required to spend hours in time and thousands of dollars in bringing their leaky Vehicles to Defendant's dealership for repair.

## <u>COUNT IV</u>
## NEGLIGENT DESIGN DEFECT

100.     Plaintiff incorporates Paragraphs 1-55 as if fully set forth herein.

101.     Plaintiff brings this claim against Defendant on behalf of himself and the Class Members.

102.     Defendant owed Plaintiff and the Class a duty to reasonably and safely design, manufacture, market, and sell the Class Vehicles.

103.     Defendant breached this duty as the design and manufacture of the Class Vehicles was defective, which caused the cars to not be fit or suitable for their intended purposes.

104.    Additionally, Defendant's defective design caused monetary damages to Plaintiff and the Class as the Class Vehicles now are worth less compared to the Class Vehicle's value prior to the existence of the Defect, given the notoriety of the Defect.

105.    Defendant did not exercise due care in the production of the Class Vehicles. Defendant's design horribly malfunctions, and many other fuel delivery systems in all sorts of similar vehicles that exist that do not have this Fuel Line Defect.

106.    Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

107.    Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

108.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

109.    The design of the Class Vehicles' defect is unacceptable as other vehicles produced by other companies and manufacturers work properly and do not have this same defect. In fact, Defendant has produced other vehicles for decades that do not have defects similar to the Class Vehicles.

110.    Plaintiff's Class Vehicle is in virtually identical condition as to when it left Defendant's factory.

111.    Further evidence of the Class Vehicles poor quality is the workmanship when compared to industry norms for the lifespan of the defective parts of the Class Vehicles, as mentioned earlier.

## COUNT V
## FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT

112.    Plaintiff incorporates Paragraphs 1-55 as if fully set forth herein.

113.    Plaintiff brings this count on behalf of himself and the Class.

114.    Defendant knew that the Class Vehicles suffered from an inherent defective Fuel delivery system, were defectively designed and/or manufactured, and were not suitable for their intended use. Defendant designed, engineered, and produced the Class Vehicles, as such, they knew of the faulty design contained within the Class Vehicles as Defendant in fact created their own Fuel Line Defect.

115.    Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles.

116.    The fact that Defendant's Class Vehicles contained the Fuel Line Defect is a material fact as fueling systems are one of the most critical safety devices for automobiles.

117.    The fuel line systems of Class Vehicles are utterly critical as it provides fuel that keeps the Class Vehicles moving and the leak spews dangerous, explosive fuel and fuel vapor everywhere that the Class Vehicle goes.

118.    Defendant was knowledgeable of the falsity of the safety of Fuel Line Defect and/or recklessly disregarded the truth or falsity of the dangerous nature of the Fuel Line Defect.

119.    Defendant intended for Plaintiff to act upon such falsity as part of Defendant's commercial operations to sell vehicles.

120.    Plaintiff and Class Members would not have purchased the Class Vehicles had they known of such Fuel Line Defect. Plaintiff and the Class did not know of such Fuel Line Defect and relied upon the false presentation of safety in their purchases of Class Vehicles.

121.    Plaintiff did not know, and could not have discovered the Fuel Line Defect, unless Plaintiff were to disassemble the Class Vehicle and inspect the fuel lines throughout the Class Vehicles. This possibility exists outside of reality as it is highly improbable that any Class Vehicle dealer or dealership would allow for such intensive inspection.

122.    Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles because:

   a.   Defendant was in a superior position to know the true state of facts about the Fuel Line Defect contained in the Class Vehicles;

   b.   The omitted facts were material because they directly impact the safety of the Class Vehicles;

   c.   Defendant knew the omitted facts regarding the defect were not known to or reasonably discoverable by Plaintiff and Class Members;

   d.   Defendant actively concealed the defective nature of the Class Vehicles from Plaintiff and Class Members.

123.    The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Whether a vehicle becomes inoperable when the Fuel delivery system fails is a material safety concern, given the inherent fire risk with gasoline fuel leaks and value loss due to wasted gasoline.

124.    Had Plaintiff and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

125.    Defendant concealed, or failed to disclose, the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce Plaintiff and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendant's defective Class Vehicles.

126.    As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase or lease of the Defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the Defective Vehicles and recover damages.

127.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

128.    Plaintiff suffered injury through Defendants conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

129.    Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

130.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

## COUNT VI
## UNJUST ENRICHMENT

131.    Plaintiff incorporates paragraphs 1-55 as if fully set forth herein.

132.    Plaintiff brings this count on behalf of himself and the Class.

133.    Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Class Vehicles.

134.    Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

135.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles without providing working fuel lines in the Class Vehicles, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

136.    The circumstances, as described herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

137.    Defendant manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe and operable, without leaking gasoline. Instead, Defendant sold Vehicles that were are deadly fire risks, given the fuel line issues. And, rather than refunding or reimbursing Plaintiff and Class Members the difference in value related to the diminished resale value, Defendant has offered to simply fix the Class Vehicles with a fix that appears to do no more than

replace defective systems with even more defective systems without fixing the root cause of the issues.

138.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT VII
### NEGLIGENCE

139.    Plaintiff incorporates paragraphs 1-55 as if fully set forth herein.

140.    Plaintiff brings this count on behalf of himself and the Class.

141.    Defendant caused Class Vehicles to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Proposed Class.

142.    At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Class Vehicles, including the duty to take all reasonable steps necessary to provide effective fuel lines in the fuel delivery systems in the Class Vehicles.

143.    Defendant breached this duty by providing Class Vehicles with the Fuel Line Defect. For decades, Defendant has produced other vehicles without this Fuel Line Defect, which is evidence that Defendant did not exercise proper care in producing the Class Vehicles. Additionally, many other manufacturers produce vehicles with effective fueling systems.

144.    Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that not providing effective Fuel delivery systems could cause or be associated with Plaintiff's and Class Members' injuries.

145.    Defendant's alleged negligence included:

a. Selling and/or distributing the Class Vehicles while negligently and/or intentionally not providing effective fuel delivery systems; and

b. Systematically failing to provide consumers with effective fuel delivery systems in multiple states.

146.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer actual monetary damages.

147.    But for Defendant's negligent design, production, and marketing of Class Vehicles, Plaintiff and the Class would not be injured as they would not have purchased the worthless Class Vehicles.

148.    Plaintiff's and Class Members' injuries were foreseeable as Defendant had received complaints from Plaintiff and Class Members regarding failure to provide safely and effectively assembled vehicle parts in the Class Vehicles at the time of purchase of Defendant's Product.

149.    Further, it is foreseeable that a vehicle with a defective fueling system would be worthless as it would be a massively dangerous vehicle to drive. It is also reasonably foreseeable that Defendant's Recall would harm the resale value of the Class Vehicles, given that a car with defective fuel lines would be worth less to a consumer, when compared to a car with working fuel lines.

150.    As a result of Defendant's breach, Plaintiff and the Class were harmed in that they are now driving vehicles with leaking fuel lines, or vehicles whose fuel lines may leak at any time, given Defendant's confounding lack of due care in its design and product.

151.    Plaintiff and the Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

152.    Plaintiff suffered injury through Defendants conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

153.    Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff and the Class intend to sell their respective Class Vehicles, the reputation of being a faulty vehicle will harm the resale value, compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

154.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff and Class Members must also incur time and costs related to towing their Class Vehicles to Defendant's dealerships. Plaintiff and the Class have been greatly inconvenienced by Defendant's Recall.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A.    Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C.    Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D.    Scheduling a trial by jury in this action;

E.    Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F.  Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G.  Any other relief the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: August 24, 2023

Respectfully Submitted,

*/s/ Bryan O. Blevins, Jr.*
Bryan O. Blevins, Jr. (SBN- 02487300)
Colin More (SBN- 24041513)
Claire Brown (SBN - 24108010)
**Provost Umphrey Law Firm, LLP**
350 Pine Street, Suite 1100
Beaumont, TX 77701
Tel: 409-838-8858
Fax: 409-813-8610
Email: bblevins@pulf.com
        cmoore@pulf.com
        cbrown@pulf.com

-AND-

Paul J. Doolittle (*Pro Hac Vice forthcoming*)
Blake G. Abbott (*Pro Hac Vice forthcoming*)
**POULIN | WILLEY
ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
        blake.abbott@poulinwilley.com